UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD JOSEPH PEREIRA,<br><br>Petitioner,<br><br>v.<br><br>GARY SWARTHOUT, WARDEN,<br><br>Respondent. | No. 2:14-cv-00530-KJM-AC P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on ground four of the first amended petition filed on November 30, 2015, ECF No. 24, which challenges petitioner's 2012 conviction and sentence for robbery, attempted carjacking, being a felon in possession of a firearm, and resisting an officer. See also ECF No. 40 (order dismissing grounds 1–3 and 5–8 as unexhausted). Respondent filed an answer, ECF No. 41, and petitioner did not file a traverse.

## BACKGROUND

I. Proceedings in the Trial Court

A. Preliminary Proceedings

Petitioner was charged with second degree robbery, attempted carjacking, being a felon in

////

////

possession of a firearm, and resisting an officer. RT 108–10.[1] Petitioner's co-defendants Eric Chiprez ("Chiprez") and Felicia Vasquez ("Vasquez") were also charged with second degree robbery, and Vasquez was charged with two additional firearms charges. RT 108–09; see also CT 12–19.[2]

The Evidence Presented at Trial

The prosecution presented the following evidence at trial regarding the charges against petitioner and his co-defendants.

On October 10, 2011, Broderick Crethers went to a Circle 7 store in his mom's van to get cigars and iced tea. RT 128–29. When Crethers was just outside the door of the store, he was approached by a man from his right side with his hands outstretched and fists clenched. RT 131–32. The man did not say anything and tried to swing at Crethers' face. RT 133–34. Crethers swung back at the man causing him to fall to the ground. RT 134. The man tried to grab and push Crethers, so Crethers pushed him away and hit him again. RT 135. The altercation continued with the man attempting again to grab Crethers and "rush" him. RT 136–37. The man attempted to drag Crethers to the man's parked car. RT 138. The assailant called out, "Help me get this [expletive] [racial slur] off me!" RT 139. Crethers ended up on top of the man as he again called out for assistance. RT 139. After the assailant had been calling for help for two or three minutes, a second man came from the driver's side of the parked car, hit Crethers in the back of his head, and pulled him off the man and onto the ground. RT 140.

Crethers identified petitioner as the person who initiated the conflict. RT 141–42. He identified Chiprez as the second man who came from the car to help petitioner during the conflict. RT 142. After pulling Crethers off petitioner, Chiprez went and stood by the trunk of the car while petitioner started kicking Crethers in the chest and ribcage. RT 143. The store clerk then said he was going to call the police. RT 144. When asked what happened next, Crethers testified as follows: "So after that, my stuff all over, he go back and grab it and take everything off of me, my jacket, my hood, my phone, my keys, and my money I had in my pocket and left with it." RT

---

[1] "RT" refers to the Reporter's Transcript on Appeal, volumes 1 through 3.
[2] "CT" refers to the Clerk's Transcript on Appeal, volumes 1 through 2.

2

144. Crethers explained that petitioner pulled his sweatshirt off him while he was on the ground. RT 145–46.

On cross-examination, Crethers testified that after petitioner kicked him, "He got all my stuff over my -- over my head like this" as he was "balled up . . . in a knot." RT 204–206. He further testified that it happened while he was on the ground defending himself and "trying to just not get assaulted anymore." RT 206. A gun was pointed at him while his property was taken from him. RT 209, 212–13. On redirect examination, when asked why he did not try to get his sweatshirt back, Crethers testified, "Because there was a gun in the midst of me doing anything that would harm myself to be in danger." RT 219. As Crethers got up from the ground, he saw the driver's side door open and woman sitting in the passenger seat holding a gun. RT 147, 149. Crethers identified the woman as Vasquez. RT 151. The woman did not say anything and Crethers heard petitioner say, "Bitch, I should have slapped you, bitch, why you didn't shoot him, bitch? Bitch, why you didn't shoot him, bitch? Bitch, you had a clear shot, bitch, why you didn't shoot him." RT 149. Petitioner jumped into the back seat of the vehicle with Crethers' property. RT 149–50. Chiprez was already in the driver's seat and they drove off once petitioner was back in the vehicle. RT 150.

Crethers was later brought to a location and identified Chiprez as the second man who participated in the conflict; Crethers described him as the "shaggy-haired guy." RT 156. Separately, Crethers was brought to a Wendy's where he identified Vasquez as the woman holding the gun during the altercation. RT 157. Finally, Crethers went to a Domino's Pizza where he identified petitioner as the man who was the initial aggressor in front of the Circle 7. RT 157–58.

Deputy Alex Lopez testified that he went to the Circle 7 the day after the incident to obtain a copy of the video surveillance footage. RT 226. He was allowed to view the video at the store but was told there was no means of making a copy of the video. RT 226–27. Lopez watched the video a few different times from a few different angles. RT 228. Lopez recounted the incident he observed on video similarly to Crethers' description. RT 229–35. Lopez recalled seeing some items on the ground after the struggle that the male who assaulted Crethers reached

down to pick up. RT 233. Lopez also testified that on the same day, he received information that Vasquez and a possible black male suspect were seen or currently at a nearby Wendy's restaurant. RT 244–45. As Lopez drove his patrol vehicle into the parking lot, he observed the black male suspect facing his vehicle take off running. RT 246. Lopez observed a detective chase the suspect, who was carrying a bag or backpack. RT 247.

Deputy Kyle Hoertsch testified that he assisted in apprehending Chiprez. Chiprez told Hoertsch that he knew Crethers after Crethers recognized him while getting out of a patrol car for an in-field identification. RT 303–04.

Barbara Epps testified that on October 11, 2011, she was sitting in her car looking at the window of a second-hand store. RT 327–28. A man she later identified as petitioner opened her car door and told her to get out. RT 329, 335. She looked at petitioner and observed that he was sweating and panicky. RT 329. Petitioner kept yelling at her to get out of the car, and she asked him what was the matter. RT 329. When Epps did not get out of the car, petitioner picked up a black bag he had with him and started fumbling with it. RT 330. As petitioner was fumbling, the police arrived, and he took off running. RT 332.

Antonio Amaya was working as a clerk at the Circle 7 on the day of the incident. RT 375. Amaya helped petitioner and when he went out of the store he was met by another man and they began to fight. RT 376. The fighting men went out of Amaya's view. RT 377. When they came back into view, Amaya observed the men "tumbling on the floor and rolling around, and just beating the stuff out of each other." RT 378. Amaya decided to run outside and tell them he was calling the police. RT 378. He saw another man come out of a vehicle and help with the fight. RT 379. Amaya yelled that he was calling the police and ran back into the store. RT 379. Before returning to the store, Amaya observed the passenger side door of the vehicle open and a female sitting inside. RT 381. When Amaya went back inside, he looked outside to see what was going on and observed the men walking away from each other and one man pick up from the ground a jacket or sweater. RT 382.

Detective Mike French testified regarding his pursuit of petitioner after petitioner was spotted at a Wendy's restaurant. RT 414–17, 421. French described the foot chase as "long"; he

had to stop during the chase for cars to go by. RT 417–18. French observed petitioner approach a woman's car and stand immediately next to her while they had "some kind of interaction." RT 418–19. When petitioner saw French, he took off running again. RT 419.

Deputy Michael Baroni testified that he retrieved the backpack petitioner had at the time he was handcuffed. RT 442. The bag contained a gun, cell phones, ammunition, keys, and some money. RT 442.

Co-defendant Vasquez presented Carolyn Schmidt as a witness. Schmidt testified that she knew Vasquez from living in the same apartment complex. RT 361. Schmidt saw Vasquez and Crethers together "too many times to count." RT 362. She witnessed Crethers say, "Whoa, you're looking good today" to Vasquez on one occasion. RT 365. Schmidt recalled that a man Vasquez identified as Ron started living with her and she stopped dating another man named Chris. RT 366–70. She later identified petitioner as Ron. RT 372–73.

Petitioner presented Marcelo Codog, an investigator for the Sacramento County District Attorney's office, as a witness. RT 499. On January 24, 2012, Codog spoke with Epps and took a statement from her. RT 499. Codog confirmed that Epps told him she was not sure what was happening as the man who approached her car stood in the doorway telling her to get out. RT 499. On cross-examination, Codog also confirmed that the statement he took was after he reviewed the statement Epps gave to law enforcement and was intended to identify any discrepancies in the report. RT 500.

B. Jury Instructions and Deliberations

On February 16, 2012, the trial court read the jury instructions. CT 56. The court instructed the jury on the elements of robbery as follows:

> The defendants, Eric Chiprez, Ron Pereira and Felicia Vasquez, are charged in Count One with robbery in violation of [California] Penal Code section 211.
>
> To prove the defendant is guilty of this crime, the people must prove that, one, the defendant took property that was not his or her own.
>
> Two, the property was taken from another person's possession and immediate presence. Three, the property was taken against that person's will.

5

> Four, the property - - excuse me, the defendant used force or fear to take the property or to prevent the person from resisting.
>
> And five, when the defendant used force or fear to take the property, he or she intended to deprive the owner of it permanently.
>
> The defendant's intent to take property must have been formed before or during the time he or she used force or fear.
>
> If the defendant did not form this required intent until after using the force or fear, then he or she did not commit robbery.
>
> If you find the defendant guilty of robbery, it is robbery of the second degree. the property taken can be of any value, however slight.
>
> Fear, as used here, means fear of injury to the person, himself or herself.
>
> Property is within a person's immediate presence if it is sufficiently within his physical control, that he could keep possession of it if not prevented by force or fear.

RT 675–76; see also CT 71. The jury was excused for the remainder of the day. CT 58.

Following a five-day break, the jury returned on February 21, 2012 to begin deliberations. CT 80. The jury requested the court-reporter's record of Crethers' testimony, and the read back commenced that afternoon. CT 80. At the end of the day, the court found good cause to excuse a juror for personal reasons. RT 693–98; CT 80–81.

An alternate juror was sworn in the following morning, February 22, 2012, and the jurors were directed to begin their deliberations anew and disregard the earlier deliberations as if they had not taken place. RT 703. The jury reached their verdicts on five of the six counts and the trial court directed the jury to place the signed verdict forms inside an envelope while it continued deliberations on the remaining count. CT 83. The court then directed the clerk to read the verdicts. Regarding petitioner, the jury found him guilty of count two (attempted carjacking), count five (unlawful possession of a firearm by a convicted felon), and count six (resisting a peace officer discharging his duty). CT 84.

In the afternoon of February 22, 2012, the jury sent the following communication:

> We the jury in the above-entitled action, request the following:
>
> Clarification on:
>
> If we the jury cannot come to a unanimous decision regarding Ronald

6

> Pereira and Count 1; are we required to deliberate on Eric Chiprez/Count 1 and Felicia Vasques [sic]/Count 1? We ask because on Jury Instructions, page 10, Section 401, #1, it states "The perpetrator committed the crime." Yet, the judge asked the Jury Foreman if we had come to a decision for any of the three defendants.

CT 85.

The court notified counsel of the communication and directed them to respond by email and return to court the following day, February 23, 2012. CT 85. The jury also requested the testimony of Lopez and Amaya. CT 85. Counsel did not object to the requested readback and the testimony was provided that day. CT 85–86.

On February 23, 2012, the court and counsel for all the defendants had an informal discussion after which the following response was sent to the jury:

> In response to your question:
>
> Even if you are unable to reach a verdict as to Defendant Ronald Pereira, you must still deliberate fully and consider the evidence as it relates to Defendants Eric Chiprez and Felicia Vasquez.
>
> A defendant may be guilty of the crime charged in Count 1, Robbery, in one of two ways:
>
> (Instruction 400)
>
> 1. He or she may have directly committed the crime. That person is called the "perpetrator". If a defendant engages in conduct that constitutes one of the acts that is an element of the crime charged, he or she may be a "perpetrator" and may be guilty of the crime charged if he or she has the specific intent required for Robbery and all of the elements of the crime of Robbery have been proved. (see instruction 1600 for the elements of the crime of Robbery.)
>
> 2. As an aider and abettor, a person may also be guilty of a crime if they aided and abetted a perpetrator. See instruction 401 which sets forth the requirements for a person to be found guilty as an "aider and abettor"
>
> Please carefully review all of the instructions, including Instruction 400, 401, 1600, and 1603.

CT 94–95. Later in the day, the jury sent the following communication:

> We, the jury in the above-entitled action, request the following:
>
> After further deliberation on the evidence presented for Count 1 for the three defendants, Eric Chiprez, Felicia Vasquez and Ronald Pereira, this jury is unable to reach a verdict for any, as of 3:00 p.m.

7

| | |
|---|---|
| 1 | on February 23, 2012. |
| 2 | CT 95. |
| 3 | The jury returned to the courtroom with all parties present, and the trial judge asked the |
| 4 | foreperson whether instructions on any legal topics would be of assistance. RT 719–26; CT 96. |
| 5 | The foreperson stated that the jury was deliberating on the five different elements of robbery, and |
| 6 | asked the court for an "interpretation of [elements] four and five" because the jury's interpretation |
| 7 | might not be "100 percent correct." RT 724. The trial judge asked the jury as a whole whether |
| 8 | that could be helpful, and one juror raised a hand. RT 725. The court asked if anyone thought |
| 9 | that there was a different area or something else the court could do to provide direction, and there |
| 10 | was no response. RT 725. The court directed the jury to resume deliberations and try to |
| 11 | articulate its area of confusion through a communication to the court. RT 725–26. |
| 12 | The jury later returned the following communication to the court: |
| 13 | We the jury, in the above-entitled action, request the following: |
| 14–17 | 1.) A more clear definition for "force and fear," as reference in number 4 of 1600, including, if possible, the time limit on when fear is a factor to consider. Please also clarify what it means to use force and fear. Please also clarify as full as possible: (if the defendant did not form this required intent until after using the force or fear, then he or she did not commit robbery.) |
| 18 | 2.) How far apart (time) does the deprivation of property have to be from the use of force or fear. |
| 19–20 | 3.) We are still unclear on whether we can decide on a verdict for potential aider and abetters if we cannot decide on a verdict for the potential perpetrator. |
| 21 | CT 96. |
| 22 | On February 29, 2012, the trial court discussed this communication with counsel and |
| 23 | ultimately decided to allow counsel the opportunity to present additional arguments on the |
| 24 | specific points the jury raised in its question. RT 740. |
| 25 | The jury returned for deliberations on March 7, 2012. See CT 98–99 (continuing |
| 26 | deliberations due to a juror's illness). The court addressed the jury on the questions raised on |
| 27 | February 23, 2012, and advised that counsel would present "brief and focused additional |
| 28 | argument to address the specific points that had been raised." RT 742; CT 96. The court then |

repeated the questions and restated and further clarified "the law on the topics that [the jury] raised." RT 743–44. Before the court gave its supplemental instruction, it reminded the jury to "keep in mind the instructions that I have given you regarding the law." RT 744. The court then provided the following supplemental instruction:

> Questions One and Two -- I've just reread those questions -- you've asked for clarification regarding the terms force and fear. Court's response: There is no formal legal definition of the term force and fear. You should rely on the common, ordinary meaning of those terms. The element of fear means that the victim was afraid of injury to himself.
>
> You have also asked about a time limit on which fear is a factor to consider. And that's in quote, time limit on which fear is a factor to consider. It is -- the Court's response: It is for you to decide whether the evidence has established that the victim was in fear, and if so, the time period for which that occurred. It is for you to decide whether the evidence has established that force or fear was used, and if so, the time period in which that occurred. In order to prove the crime of robbery, each of the following elements must be proved: One, a person had possession of property of some value, however slight; two, the property was taken from that person or immediate presence; three, the property was taken against the will of that person; four, the taking or carrying away was accomplished either by force or fear to gain possession of the property; five, *the property was taken with the specific intent permanently to deprive that person of the property*.
>
> To be guilty of robbery as a perpetrator, *the defendant must have formed the required specific intent either before the use of force or fear, or during the time such force or fear was being used*. To be guilty of robbery as an aider and abettor, the defendant must have formed the intent to aid and abet the commission of the robbery before or while a perpetrator carried away the property to a place of temporary safety.
>
> With respect to this -- the Court's response, I am now going to permit counsel to -- I'm going to note, though, there was a third question: We're still unclear on whether we can decide on a verdict for potential aider and abettor if we cannot decide on a verdict for the potential perpetrator, and that is contained within the Court's response.

RT 744–45 (emphasis added). Counsel then presented further arguments which focused on the relationship between the specific intent to take the property and the use of force or fear. RT 745–72.

Later that afternoon, the jury communicated to the court the following:

> After more deliberation, and consideration of the Court's answers to

9

> our questions; additional instructions; and additional attorney argument, we remain divided over Count 1. Some would say strongly divided.

CT 102. The trial court spoke with the jury and ordered it to continue deliberating. RT 778–83.

On March 8, 2012, the jury returned guilty verdicts on count one as to petitioner and co-defendant Vasquez. RT 787–88. Petitioner was eventually sentenced to a term of six years and six months. RT 820.

## II. Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on July 23, 2013. Lodged Doc. 1. The California Supreme Court denied review on September 25, 2013. Lodged Doc. 3.[3]

By operation of the prison mailbox rule, the instant federal petition was filed February 8, 2014.[4] ECF No. 1. Petitioner's first amended petition was filed on November 30, 2015. ECF No. 24. Respondent answered on April 20, 2017. ECF No. 41. Petitioner did not file a traverse.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99

---

[3] The remaining state court records show petitioner's efforts to exhaust additional claims. See Lodged Docs. 9–13; see also ECF Nos. 38, 40.
[4] See supra n. 1.

10

(2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 99 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether . . . the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407–08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520–21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181–82. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 101.

## DISCUSSION

### I. Petitioner's Allegations and Pertinent State Court Record

Petitioner contends that the trial court omitted a key element of robbery when it reread the elements to the jury after its reported deadlock. ECF No. 24 at 5. Specifically, petitioner alleges that the trial court failed to instruct that "the required intent to take property must be formed before or during the use of force or fear." Id. Petitioner further alleges that the jury "did not grasp the tools needed to provide petitioner with a fair deliberation and trial." Id. at 22.

The federal habeas petition is supported by excerpts of petitioner's brief on direct appeal. Id. at 126–29; see also Lodged Doc. 8. In petitioner's appellate argument, he contended that "[t]he jury was able to reach a verdict for the robbery count only after it was given the misleading instruction which omitted any reference to the taking of property." ECF No. 1 at 127. The jury deliberated February 21–23, 2012 without reaching a verdict and returned a verdict on March 8, 2012, one day after the trial court's supplemental instruction was given. Id. In that regard, the appellate brief argues, "[i]f the jury returns a verdict shortly after the delivery of an erroneous supplemental instruction, the instructional error was likely to have been prejudicial." Id.

In petitioner's opening brief, he argued in part:

> The evidence suggested the taking of the property occurred after the altercation was over. The taking of property appeared to be an afterthought by appellant. The jury was deadlocked over the robbery count because it was unclear about the required timing between the taking of the property and the use of force or fear. Under the law of robbery, the robber must form the specific intent to take property either before, or during, the use force [sic] or fear. The trial court gave a supplemental instruction on this principle, but omitted the crucial portion of the instruction dealing with the taking of property. Because this error was prejudicial, the judgment of guilt to count one must be reversed.

Lodged Doc. 6 at 13; see also id. at 22 (arguing that "[t]he problem with this [supplemental] instruction was that it omitted the words 'to take property' after the words, 'specific intent'"). Petitioner also argued in his reply brief that the problem with taking the jury instructions as a whole is that "it ignores the fact that the jury was unable to reach a verdict with the correct

12

instructions and reached a verdict only after it had been given the misleading instruction which omitted the required relationship between force and the taking of property." Lodged Doc. 8 at 2.

## II. The Clearly Established Federal Law

Federal habeas corpus relief does not lie for errors of state law; and a claim that a state court failed to follow its own state law with regard to jury instructions given at trial does not necessarily invoke a federal constitutional question. See Estelle v. McGuire, 502 U.S. 62, 71–72 (1991). In order to warrant federal habeas relief, a challenged jury instruction must violate due process to the extent that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Id. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977); see also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (noting that it is the "rare case" in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court (quoting Henderson, 431 U.S. at 154)). A defendant is not entitled to a specific instruction provided that other instructions, in their entirety, adequately inform the jury of the defense theory of a case. United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996).

A "slight *possibility*" that the jury misapplied the instruction is not enough to warrant habeas relief. Waddington v. Sarausad, 555 U.S. 179, 191 (2009). Rather, an ambiguous instruction violates due process only when there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. Id. at 190–91; Estelle, 502 U.S. at 72 & n.4. In making this determination, the reviewing court must not view the instruction in artificial isolation, but must consider it in the context of the trial record and the instructions as a whole. Estelle, 502 U.S. at 72; Duckett v. Godinez, 67 F.3d 734, 746 (9th Cir. 1995) (explaining that courts essentially must determine "whether, under the instructions as a whole and given the evidence in the case, the failure to give the [omitted] instruction rendered the

13

trial so fundamentally unfair as to violate federal due process" (citing Cupp, 414 U.S. at 147));
see also Waddington, 555 U.S. at 191 (explaining that a challenged instruction must be evaluated
in the context of other instructions and the trial record as a whole, not in artificial isolation). In
other words, the court must evaluate jury instructions in the context of the overall charge to the
jury as a component of the entire trial process. See Cupp, 414 U.S. at 146–47 (explaining that the
challenged instructional error must be assessed not by focusing on the alleged faulty instruction in
isolation, but by considering its effect in the context of the overall charge).

Even if omission of a particular instruction was constitutionally erroneous, federal habeas relief is not available for such a trial-type error unless the error had a substantial and injurious effect or influence in determining the jury's verdict. See Brecht v. Abrahamson, 507 U.S. 619, 622–23 (1993) (quotations omitted); see also Hedgpeth v. Pulido, 555 U.S. 57, 61–62 (2008) (per curiam) (applying Brecht prejudice standard to habeas claims of instructional error).

III.   The State Court's Ruling

Petitioner raised his improper jury instruction claim on direct appeal. The California Court of Appeal decision, Lodged Doc. 1, constitutes the last reasoned decision on the merits because the state supreme court denied discretionary review, Lodged Doc. 3. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The California Court of Appeal ruled as follows:

> Defendant contends the trial court's supplemental instructions regarding the mental element for robbery constituted reversible error.
>
> Since defendant did not object to the instruction, his contention is forfeited unless the instruction affected his substantial rights. (§ 1259; *People v. Christopher* (2006) 137 Cal.App.4th 418, 426-427.) Substantial rights are equated with a miscarriage of justice, which results if it is reasonably probable the defendant would have obtained a more favorable result had the correct instructions been given. (*Christopher,* at pp. 426-427; *People v. Watson* (1956) 46 Cal. 2d 818, 835-836.)
>
> "On review, we examine the jury instructions as a whole, in light of the trial record, to determine whether it is reasonably likely the jury understood the challenged instruction in a way that undermined the presumption of innocence or tended to relieve the prosecution of the burden to prove defendant's guilt beyond a reasonable doubt. [Citation.]" (*People v. Paysinger* (2009) 174 Cal.App.4th 26, 30.) "It is well established that the instruction 'may not be judged in

14

> artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record. [Citation.]" (*Estelle v. McGuire* (1991) 502 U.S. 62, 72 [116 L.Ed.2d 385, 399].)
>
> Defendant's contention focuses on one sentence of the four-paragraph instruction: "To be guilty of robbery as a perpetrator, the defendant must have formed the required specific intent either before the use of force or fear, or during the time such force or fear was being used." One element of robbery is the intent to permanently deprive the owner of the property. (*People v. Marshall* (1997) 15 Cal.4th 1, 34.) "[T]he evidence must show that the requisite intent to steal arose either before or during the commission of the act of force. [Citation.]" (*Ibid.*) Defendant asserts that since the sentence in question omitted the term "to take property," the instruction "did not tell the jury anything about the required relationship between the taking of property and fear and force." Noting the jury's confusion on the elements of robbery, defendant claims the supplemental instruction "increased the jury's confusion by suggesting that a specific intent to use force or fear was sufficient to establish the crime of robbery." Given the jury's difficulty with the robbery count and the fact that defendant took the property after he finished assaulting the victim, defendant concludes that he was necessarily prejudiced by the alleged error.
>
> Defendant's claim improperly isolates one sentence of the supplemental instruction from its context. As recounted above, the sentence defendant attacks was preceded by this sentence, describing the mental element of robbery: "the property was taken with the specific intent permanently to deprive that person of the property." It is clear that the term "required specific intent" in the allegedly erroneous sentence was referring to the prior sentence's "specific intent permanently to deprive that person of the property." The fact that these two sentences contain the only references in the instruction to the term "required specific intent" reinforces our conclusion.
>
> Read as a whole, the supplemental instruction informed the jury that the intent to steal must be formed before or during the use of force or fear. This correctly stated the law.

Lodged Doc. 1 at 7–8.

IV.  Objective Reasonableness Under § 2254(d)

The state court determined that the trial court's supplemental instruction on robbery correctly stated the law. Lodged Doc. 1 at 8. Because the Court of Appeal determined that the challenged instruction was not improper, petitioner's challenge does not give rise to a federal question cognizable on federal habeas review. Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). Thus,

the claim is not cognizable on federal habeas and should be rejected.

Even if the court finds the claim cognizable, it is without merit. As explained above, to obtain federal collateral relief from errors in a jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle, 502 U.S. at 72; Cupp, 414 U.S. at 147. Further, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Estelle, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson, 431 U.S. at 154).

Petitioner takes issue with the trial court's supplemental instruction, which petitioner characterizes as omitting reference to the necessary chronological relationship between the formation of intent and the taking of property. See ECF No. 24 at 5. As the state court explained, however, the entirety of the instruction made clear that the term "required specific intent" in the allegedly erroneous sentence referred to the preceding sentence's "specific intent permanently to deprive that person of the property." Lodged Doc. 1 at 8. The challenged instruction thus adequately addressed the relationship between intent and act.

Moreover, petitioner has not shown prejudice. The trial court specifically referred the jury to the prior instructions given, which included the entire instruction on robbery. See CT 94–95 (February 23, 2012 response from the trial court to the jury, referring the jury to "instruction 1600 for the elements of the crime of Robbery" and to "Please carefully review all of the instructions, including Instruction . . . 1600"); RT 744 (March 7, 2012 direction from the court to the jury, beginning with the reminder to "keep in mind the instructions that I have given you regarding the law"). Petitioner has not shown that the trial court's response to the jury's questions about elements four and five had a "substantial and injurious affect" on the jury's verdict, in large part because the supplemental instruction was not incorrect. Brecht, 507 U.S. at 637; Hedgpeth, 555 U.S. at 61–62. The court simply responded to the question posed and referred the jury back to the entirety of the instructions already given. RT 744–45. And when responding to the question posed, the trial court reiterated all of the elements of robbery, including: "the property was taken

with the specific intent permanently to deprive that person of the property. [¶] To be guilty of robbery as a perpetrator, the defendant must have formed the required specific intent either before the use of force or fear, or during the time such force or fear was being used." RT 744–45.

Further, petitioner has not demonstrated that the jury's verdict would have been different if the court had again, or only, referred the jury specifically to CALCRIM No. 1600. That the jury posed a question about elements four and five of the crime suggests that the jury was only considering those two issues at that time. The jury's communication further suggested that the jury was aware of all the elements. See CT 96 (the jury also asked, "How far apart (time) does the *deprivation of property* have to be *from the use of force or fear*" (emphasis added)). In any event, the court repeated some of the language from CALCRIM No. 1600 in its supplemental instruction. RT 744–45. Considering the context of the trial record and the jury instructions as a whole, petitioner fails to establish a reasonable likelihood that the jury applied the challenged instruction on robbery in a way that violates the Constitution.

The Court of Appeal's rejection of this claim was not unreasonable. For these reasons, petitioner is not entitled to relief on this claim.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights. Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied. It is FURTHER RECOMMENDED that a certificate of appealability, see 28 U.S.C. § 2253(c), be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to

which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 16, 2019

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE